IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DONALD STACY

             Plaintiff,

    v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

             Defendant.

No. CV 07-263-MO

OPINION AND ORDER

**MOSMAN, J.**,

Mr. Donald Stacy filed an application for disability insurance benefits on July 11, 2001. In 2002, an Administrative Law Judge ("ALJ") found Mr. Stacy not disabled. Following a remand order, the ALJ obtained additional evidence and conducted further proceedings in 2006. She again found Mr. Stacy not disabled. Mr. Stacy now argues the ALJ's decision was not based on substantial evidence and did not comply with the remand order. Although the ALJ properly discredited lay witness testimony, her determination of Mr. Stacy's residual functional capacity ("RFC") is not based on substantial evidence, and she did not fully comply with the previous remand order. Therefore, I REVERSE and REMAND this case for further proceedings.

## BACKGROUND

I.   **Procedural History**

In his 2001 application, Mr. Stacy alleged disability since June 30, 1994, based on vision

problems, heart problems, gout, a chronic sprained wrist, and back pain. (Admin. R. 127, 154.) A hearing was held before an ALJ on September 17, 2002, and Mr. Stacy appeared and testified. His wife, a medical expert, and a vocational expert also testified.

On October 23, 2002, the ALJ issued a decision finding Mr. Stacy not disabled. (*Id.* at 12-22.) Mr. Stacy then filed a complaint in this Court, and based on a stipulation of the parties, Judge Jelderks reversed and remanded the case for further administrative proceedings. (*Id.* at 382-83.)

On November 9, 2004, the Appeals Council issued an order remanding the case to the ALJ.[1] (*Id.* at 384-88.) The ALJ obtained additional evidence and conducted a new hearing on January 11, 2006; only Mr. Stacy testified. (*Id.* at 1761-76.) The ALJ then issued a decision on October 25, 2006, finding Mr. Stacy not disabled. Mr. Stacy filed the current action on February 23, 2007.

**II.**    **Statement of Facts**

Mr. Stacy alleges disability beginning June 1994. (*Id.* at 127.) He acquired sufficient quarters of coverage to maintain disability insured status through June 30, 2000; therefore, he

---

[1] The remand order instructed the ALJ to (1) reevaluate Mr. Stacy's vision problems; (2) obtain additional evidence from medical and vocational experts, as needed; (3) further evaluate and document Mr. Stacy's work activity; and (4) further develop the record if necessary. The Appeals Council also instructed the ALJ as follows:

> If warranted by the expanded record, obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base. . . . Further, before relying on the vocational expert evidence the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the <u>Dictionary of Occupational Titles (DOT)</u> and its companion publication, the <u>Selected Characteristics of Occupations</u> . . . .

(*See* Admin. R. 382-88.)

PAGE 2 OPINION AND ORDER

must qualify as disabled before June 30, 2000. *See* 42 U.S.C. § 416(i)(3).

Over the years, Mr. Stacy has had various medical problems. First, he has poor vision, and in 1998 he had corrective laser surgery, which resulted in visual acuity of 20/50 in the right eye and 20/40 in the left eye. (Admin. R. 1690.) In 2005, Mr. Stacy had visual acuity of 20/200 in the right eye and 20/30 in the left eye. (*Id.* at 1691.) Second, he experiences acute gout attacks. (*Id.* at 241, 261.) Third, he has heart problems, which required an intra-coronary stent and often cause fatigue. (*Id.* at 229.) Fourth, he has a chronic left wrist sprain, and he cannot use his left hand because of a severe laceration.[2] (*Id.* at 59, 210.)

### A.    *Lay Witness Testimony*

Mr. Stacy testified during the 2002 and 2006 hearings. First, he said he could not read printed or small text: "I can't read a book anymore. A novel." (*Id.* at 55) However, he acknowledged he was still reading books before June 30, 2000. (*Id.*)

Second, he testified that he suffered from acute gout attacks. When he experiences a gout attack, his left foot and ankle swell, and he must rest; he cannot walk. (*Id.* at 50.) The effects of the gout attacks, according to Mr. Stacy, last for three to five days. (*Id.*)

Third, he discussed the effects of his heart condition. For example, when he does chores, he gets fatigued, and he must stop and rest. He said he fed his horses a "little bucket of grain" or small amounts of hay, and "this morning I . . . [got fatigued while] . . . I was feeding the horses and I had to stop and rest." (*Id.* at 49, 51.) He also said climbing stairs and walking up hills caused similar fatigue. (*Id.* at 45-46.)

---

[2] Mr. Stacy lacerated his fingers with a saw in January 2002. Because this occurred after June 30, 2000, a disability finding cannot be based on his severe laceration.

Mr. Stacy's wife also testified during the 2002 hearing.  First, with respect to Mr. Stacy's vision, she said: "[E]ven glasses did not correct his vision enough to read. . . .  He is able to do a limited amount of reading.  He can't read . . . ."  (*Id.* at 91.)  Second, she testified that he has frequent gout attacks, which have become more severe and cause "constant pain."  (*Id.* at 85-86.)  Third, she testified that he is easily fatigued and has to rest frequently.  (*Id.* at 84-92.)  However, she also said Mr. Stacy helps maintain their yard, helps maintain their rental properties, feeds the horses (including loading hay into a truck), supervises the grandchildren when they ride the horses, and does some woodworking.  (*Id.* at 81-92; *see also id.* at 1768-69.)

**B.** *The Medical Expert*

Dr. John Grover testified that Mr. Stacy was not disabled on or before June 30, 2000.  Dr. Grover made the following statements during the 2002 hearing:

ALJ:            I'd like your opinion as to whether or not at the date last insured . . . this individual met or equaled any of the listings?

Dr. Grover:    He met none of the listings as far as his heart is concerned, no.

ALJ:            Okay.  Did you see any other listings that you felt he met?

Dr. Grover:    I don't believe he did, no.

(*Id.* at 94.)

He also said there was no evidence of frequently recurring gout attacks in the medical record prior to June 30, 2000.[3]  ". . . I'm kind of troubled by his history because usually with gout over time it's better not worse. . . .  At any rate according to the disability evaluation criteria he doesn't meet -- the gout does not rise to that level."  (*Id.* at 95-96.)

---

[3] Upon reviewing the administrative record, I found only two references to gout in the entire medical record before June 30, 2000.  (*E.g.*, Admin. R. 241, 261.)

PAGE 4 OPINION AND ORDER

C.    *The Vocational Expert*

During the 2002 hearing, the ALJ presented the vocational expert, Ms. C. Kay Hartgrave,

with the following hypothetical individual:

> The date last insured let me determine I think he was 60 years of age.  With a high
> school plus education. . . .  This individual could do medium work and in addition
> he would have some limitation in his visual acuity.  He is able to see well enough
> to drive a car, operate hazardous machinery.

(*Id.* at 99.)  Ms. Hartgrave testified that Mr. Stacy would not be able to perform any past, relevant

work.  He could, however, work as a dispatcher of maintenance services or a supervisor of

janitorial services, and both jobs exist in significant numbers in the national economy.  (*Id.* at

101-04.)

## DISCUSSION

I.    <u>Standards</u>

The initial burden of proof rests on a claimant to establish disability.  *Roberts v. Shalala*,

66 F.3d 179, 182 (9th Cir. 1995).  The claimant must demonstrate the "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment which . . . has lasted or can be expected to last for a continuous period of not less

than 12 months." 42 U.S.C. § 423(d)(1)(A).  The Commissioner bears the burden of developing

the record.  *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991).

The Commissioner must conduct a five-step sequential inquiry to determine whether a

claimant is disabled within the meaning of the Act.  *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987);

20 C.F.R. § 404.1520.  Each step is potentially dispositive.  At step one, the claimant is not

disabled if the Commissioner finds he is engaged in substantial gainful activity.  *Yuckert*, 482

U.S. at 140; 20 C.F.R. § 404.1520(a)(4)(i).  At step two, the claimant is not disabled if he has no

"medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20

C.F.R. § 404.1520(a)(4)(ii).  At step three, the claimant is disabled if his impairments meet or

equal "one of a number of listed impairments that the [Commissioner] acknowledges are so

severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §

404.1520(a)(4)(iii).

　　　　If the inquiry proceeds to step four, the Commissioner must assess the claimant's RFC,

which is an assessment of the sustained, work-related activities the claimant can do on a regular

and continuing basis.  20 C.F.R. § 404.1545(a); *see also* Social Security Ruling ("SSR") 96-8p.

At step four, the claimant is not disabled if the Commissioner finds he retains the RFC to

perform his past work. *Yuckert*, 482 U.S. at 142; 20 C.F.R. § 404.1520(a)(4)(iv).  At step five,

the Commissioner must determine whether the claimant is able to do any other work that exists

in the national economy. *Yuckert*, 482 U.S. at 142; 20 C.F.R. § 404.1520(a)(4)(v).  Here the

burden shifts to the Commissioner; the Commissioner must show a significant number of jobs

exist in the national economy that the claimant can do. *See Yuckert*, 482 U.S. at 141-42; *see also*

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the Commissioner meets this burden,

the claimant is not disabled. *Tackett*, 180 F.3d at 1098-99.

　　　　A district court must affirm the Commissioner's decision if it is based on proper legal

standards and the findings are supported by substantial evidence in the record as a whole.

42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004);

*Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001).  "Substantial evidence means more than

a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). If the "evidence is susceptible to more than one rational interpretation," one of which supports the Commissioner's final decision, the district court must uphold the Commissioner's decision. *Andrews*, 53 F.3d at 1039-40; *Batson*, 359 F.3d at 1193; *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

## II.    The ALJ's Decision

Mr. Stacy "disputes the ALJ's finding, at step five of the sequential analysis: that Plaintiff retains the residual functional capacity to perform work, which exists in significant numbers in the national economy." (Pl.'s Br. (#8) 11.) Mr. Stacy argues his combined impairments, including vision problems and gout, "preclude him from performing work which exists in significant numbers in the national economy, and that he is, therefore, disabled." (*Id.*)

## III.    Lay Witness Credibility

Mr. Stacy argues the ALJ improperly discredited his and Mrs. Stacy's testimony, which resulted in an incorrect RFC. He argues the ALJ did not give specific, clear, and convincing reasons for discrediting their testimony.

An ALJ may find a claimant not credible by giving specific, clear, and convincing reasons, supported by substantial evidence. *Thomas*, 278 F.3d at 958-59; SSR 96-7p. The ALJ's reasons must be "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit [a] claimant's testimony." *Thomas*, 278 F.3d at 958 (citing *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc)). If the ALJ's credibility determination is supported by substantial evidence, the reviewing court may not engage in second-guessing. *Id.*

During the 2002 hearing, after citing inconsistencies between Mr. and Mrs. Stacy's

testimony, the ALJ said: "[A]ltogether I'm not finding the testimony I'm hearing today credible."

(Admin. R. 94.)  In the 2002 decision,[4] she noted that Mr. Stacy's testimony conflicted with Mrs.

Stacy's testimony.  (*Id.* at 15.)

> In addition to conflicting reports about how his hand was injured and whether he
> made repairs to rentals, the claimant specifically denied moving bales of hay.  His
> wife, however, reported he lifted hay bales into the truck to take to horses at one
> of their properties the day before the hearing.  The claimant testified that he
> couldn't read the newspaper.  His wife said that he reads it but with difficulty.
> The claimant initially testified to having one rental.  He later changed to having 6
> or 7 rentals.

(*Id.* at 18-19.)  In the 2006 decision, the ALJ noted Mr. Stacy's responses to questions during the

2006 hearing were vague.  Furthermore, "[h]is statements at the current hearing are not supported

by the record as a whole."  (*Id.* at 357-58.)

The ALJ also discussed specific evidence in the record that conflicted with Mr. Stacy's

testimony.  First, Mr. Stacy alleged his vision was so poor he could not read a novel or the

newspaper.  However, a 2005 letter from Dr. Storey said: "Newspaper print is about 20/40, so he

should be able to read print this size or larger."  (*Id.* at 360, 1691.)  Second, Mr. Stacy testified

that he suffered from acute gout attacks every three to five weeks; however, the medical records

before June 30, 2000, contain few references to gout.  (*Id.* at 50, 241, 261, 360.)  Third, Mr.

Stacy testified that his heart condition requires him to rest approximately every twenty minutes;

however, the record indicates he helps maintain numerous rental properties and helps manage

two corporations.  (*See id.* at 57, 357-58.)  Furthermore, his "cardiac impairment . . . reacted

nicely to medical intervention."  (*Id.* at 361.)  Mr. Stacy's testimony is therefore inconsistent with

the record.

---

[4] The 2006 decision incorporates the 2002 decision.  (Admin. R. 361.)

Mrs. Stacy's testimony not only conflicted with Mr. Stacy's testimony, but was also internally inconsistent.  For example, she said Mr. Stacy did not repair the rentals, but when the ALJ reminded her she was under oath, she admitted he does some repairs on the rentals.  (*Id.* at 79, 82.)  Her testimony about Mr. Stacy's ability to read was also inconsistent.  (*Id.* at 91.)

It is clear the ALJ did not arbitrarily discredit Mr. and Mrs. Stacy's testimony.  The ALJ gave reasons for finding Mr. and Mrs. Stacy not credible, and she discussed specific evidence in the record that conflicted with their testimony.  *See, e.g.*, *Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999) (relying on inconsistent statements and the administrative record to reject a claimant's testimony).  The ALJ's credibility determination is therefore supported by substantial evidence in the record.

**IV.    The Medical Expert's Testimony**

Mr. Stacy also argues the ALJ improperly rejected Dr. Grover's testimony because "she did not find that Mr. Stacy's functional limitations included avoidance of extreme exertion." (Pl.'s Br. (#8) 14.)  The Commissioner argues Mr. Stacy mis-characterizes Dr. Grover's testimony; "[Dr. Grover's] general statement is accommodated by [his] . . . more specific statement that Plaintiff should be able to do light and/or moderate (medium) work."  (Def.'s Br. (#9) 8.)

Dr. Grover testified as follows:

Dr. Grover:    In terms of function there should be essentially no specific limitations except in so far as general advice not to get exhausted or you know.  But at very most it would be just a limit extreme exertion.

ALJ:    So, would he had been able to do the -- what we call medium work of on his feet all day long -- this is just in terms of the heart, not the

PAGE 9 OPINION AND ORDER

gout issues.  And how about lifting weights?

Dr. Grover:      Well, we'd probably put a restriction of weight of 30 or 40 pounds.

ALJ:             Okay.

Dr. Grover:      But it would be -- he should be able to do light and/or moderate
                 work according to the disability evaluation --

(Admin. R. 94-95.)  Mr. Stacy's argument seems to focus on only one part of Dr. Grover's

testimony.  He said Mr. Stacy should avoid exhaustion, which meant, "at [the] very most," an

instruction to avoid extreme exertion.  He further clarified his statement when he told the ALJ

that Mr. Stacy would be able to do "light and/or moderate work."  Ultimately, the ALJ adopted

Dr. Grover's testimony that Mr. Stacy could do "light and/or moderate work"  (*See id.* at 361.)

Thus, Mr. Stacy is incorrect, and the ALJ did not reject Dr. Grover's testimony.

## V.    **The RFC**

The ALJ determined Mr. Stacy has the RFC for a medium level of physical exertion.  She

noted that Mr. Stacy had "not established any visual impairment prior to his date last insured;

therefore, there are no visual limitations in his" RFC.  (*Id.*)  Furthermore, Mr. Stacy's "medically

determinable impairment could not reasonably be expected to produce the alleged symptoms."

(*Id.*)

Mr. Stacy argues the ALJ's RFC determination was incorrect because it did not account

for all of his functional limitations and did not account for Dr. Grover's testimony that he could

lift only up to forty pounds.  Mr. Stacy's alleged functional limitations are based primarily on the

lay witness's testimony, and, as discussed above, the ALJ properly discredited that testimony.

Mr. Stacy's second argument, that the RFC does not account for the thirty to forty pound lifting

PAGE 10 OPINION AND ORDER

limitation, is more compelling.

The ALJ erred when she determined Mr. Stacy had the RFC to perform medium work. "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c). Mr. Stacy can lift up to forty pounds. (Admin. R. 94-95.) Mr. Stacy therefore cannot do medium work because it involves lifting up to fifty pounds.

**VI.** **The Vocational Expert's Testimony**

Based on the erroneous RFC, the vocational expert, Ms. Hartgrave, testified that Mr. Stacy could not do his past, relevant work. She then "testified that a hypothetical individual with . . . [Mr. Stacy's] 'RFC' and with his vocational characteristics of age, education, and work experience could perform . . . jobs in the national economy." (*Id.* at 363.) Ms. Hartgrave identified two jobs: (1) a dispatcher in maintenance service and (2) a supervisor in janitorial services. (*Id.*) Because of Ms. Hartgrave's testimony, the ALJ determined Mr. Stacy was not disabled.

The Commissioner concedes: (1) the evidence does not establish Mr. Stacy was capable of performing a full range of medium work; and (2) the "application of the Guidelines does not evidence a finding of not disabled." (Def.'s Br. (#9) 14-15.) However, the Commissioner argues the evidence establishes Mr. Stacy could perform sedentary or light work, and "the ALJ's alternate finding based on VE testimony supports a finding of not disabled" because Mr. Stacy could work as a dispatcher in maintenance service. (*Id.* at 8, 15-16.)

Mr. Stacy argues the vocational expert's testimony contained substantial errors. First, Ms. Hartgrave's testimony conflicted with the *Dictionary of Occupational Titles* ("DOT"). The

PAGE 11 OPINION AND ORDER

expert said both jobs (dispatcher in maintenance service and supervisor in janitorial services) were in the light category. (Admin. R. 99, 102-03.) However, the DOT identifies the dispatcher as sedentary work and the supervisor as medium work. Ms. Hartgrave also gave the wrong specific vocational preparation numbers. (*Id.*) Based on these errors, Mr. Stacy argues:

> The expert was wrong regarding the jobs. Although the jobs may or may not be consistent with the ALJ's hypothetical, this fact is unknown given the degree of errors made by the expert regarding fundamental components of the work. . . . No assurance is given that the rest of the expert's testimony about the availability of the jobs was accurate.

(Pl.'s Br. (#8) 29.) Furthermore, the ALJ did not comply with the remand instruction from the Appeals Council that the ALJ "identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the <u>Dictionary of Occupational Titles (DOT)</u> and its companion publication, the <u>Selected Characteristics of Occupations</u> . . . ." (*Compare* Admin. R. 382-88, *and id.* at 362-63.)

Mr. Stacy has identified real problems with the Commissioner's step five findings. First, Mr. Stacy cannot perform medium work, and the ALJ's RFC is incorrect. Second, because the RFC was incorrect, the hypothetical the ALJ presented to the VE was incorrect. Third, the VE's testimony conflicts with the DOT and the ALJ did not resolve the conflicts as instructed by the Appeals Council. Thus, the Commissioner's step five determination is not supported by substantial evidence. The evidence in the record actually conflicts with the ALJ's RFC determination, and the VE's testimony both relies on the incorrect RFC and conflicts with the DOT.

## REMAND

The decision whether to remand for further proceedings or for immediate payment of

PAGE 12 OPINION AND ORDER

benefits is within the discretion of the court.  *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000.), *cert. denied*, 531 U.S. 1038 (2000).  The issue turns on the utility of further proceedings. Remand for further administrative proceedings is appropriate if enhancement of the record would be useful.  *See Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004).  Conversely, where the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits.  *Id.*

Here, because of the problems with the RFC and VE's testimony, remand is appropriate. Upon remand, the ALJ should formulate a correct RFC, further evaluate step five of the disability analysis, and otherwise comply with the previous remand order.

## CONCLUSION

Based on the forgoing, this case is REVERSED and REMANDED for further proceedings at step five of the disability analysis.


IT IS SO ORDERED.

DATED this   17th    day of April, 2008.



/s/ Michael W. Mosman
MICHAEL W. MOSMAN
United States District Court